IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>THE 12 PERCENT FUND I, LLC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 07-bk-6481-SSC<br>Case No. 07-bk-6484-GBN<br><br>Jointly Administered |
| In Re:<br><br>COYOTE GROWTH MANAGEMENT, LLC., | Adv No. 08-ap-257-SSC<br><br>(Not for Publication- Electronic Docketing ONLY) |
| DAVID M. REAVES, Chapter 11 Trustee,<br><br>Plaintiff,<br>v.<br><br>RODERICK R. MCBROOM and<br>THOMAS G. JUNGHANS,<br><br>Defendants. | MEMORANDUM DECISION |

## I. INTRODUCTION

This matter comes before the Court on the Plaintiff's April 1, 2009 Motion for Summary Judgment. The Defendants filed a Response and Cross-Motion for Summary

1

Judgment on May 15, 2009.[1]  The Court is now ready to rule on the issues presented.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.  The issues addressed herein constitute a core proceeding over which this Court has jurisdiction.  28 U.S.C. §§ 1334(b) and 157(b) (West 2009).

## II.  FACTUAL BACKGROUND

The material facts are undisputed in this matter.  The 12 Percent Fund I, LLC and Coyote Growth Management (collectively, the "Debtors") were created as investment funds by Michael Hannan.  Prior to the filing of the bankruptcy petitions in the above-captioned cases, Roderick R. McBroom and Thomas G. Junghans ("Defendants"), made loans to, and invested in, the Debtors.

On August 28, 2006, the Arizona Corporation Commission (the "ACC") commenced administrative proceedings, in which it alleged, among other things, that Michael Hannan had violated the securities laws of the State of Arizona.

On May 9, 2007, McBroom filed a lawsuit in the District Court of Archuleta County, Colorado against the Debtors and Hannan, asserting claims for, among other things, reformation of promissory note, judgment on the promissory note, imposition of an equitable lien on real property, and judicial foreclosure of the equitable lien (the "McBroom Lawsuit").  In connection with the McBroom Lawsuit, on May 9, 2007, McBroom recorded a Notice of Lis Pendens in Archuleta County, Colorado.

A second lawsuit was filed jointly by the Defendants on June 4, 2007, in the District Court of Archuleta County, Colorado. The Defendants asserted claims for breach of

---

**1.** The Plaintiff filed a Reply on June 12, 2009.  After oral argument on August 13, 2009, the Court requested further briefing from the parties.  In September 2009, the parties timely submitted memoranda of law.  The issues presented in this matter were subsequently deemed under advisement.

2

contract, unjust enrichment, an equitable lien on real property, and judicial foreclosure of the equitable lien (the "McBroom & Junghans Lawsuit"). In connection with the McBroom & Junghans Lawsuit, on June 4, 2007, the Defendants recorded a Notice of Lis Pendens in Archuleta County, Colorado.

On June 12, 2007, the ACC commenced a civil action in Arizona against the Debtors in the Maricopa Country Superior Court, by filing a Verified Petition for Appointment of Receiver. On July 6, 2007, the Arizona Court entered an order appointing a receiver (the "Receiver") for the Debtors. At the time the Receiver was appointed, the Debtors owned the following real property located in the State of Colorado: (1) 2560A West Highway 160, Pagosa Springs, Colorado (the "Harman Property"); (2) 25 Crown Court, Pagosa Springs, Colorado (the "Crown Property"); and (3) 69 Willow Court, Pagosa Springs, Colorado (the "Willow Property").

On August 30, 2007, McBroom obtained a default judgment against the Debtors in the McBroom Lawsuit in the amount of $186,029.23. Also on August 30, 2007, McBroom and Junghans obtained default judgments in the McBroom & Junghans Lawsuit, with McBroom obtaining a judgment in the amount of $109,985.79, and Junghans obtaining a judgment in the amount of $104,701.51. The total principal amount of the judgments, as entered, was $400,716.53. The Colorado State Court entered judgment only upon the claims of breach of contract and unjust enrichment, denying judgment upon the equitable lien claims.

Thereafter, on September 7, 2007, in Colorado, McBroom recorded a transcript of the judgment obtained in the McBroom Lawsuit, and recorded an amended transcript of judgment on September 17, 2007. On September 4, 2007, McBroom and Junghans recorded transcripts of their separate judgments obtained in the McBroom & Junghans Lawsuit, and each recorded an amended transcript of judgment on September17, 2007.

The Defendants initiated actions, in Colorado, to execute upon the judgments on September 17, 2007, by causing Writs of Execution to be issued. A Certificate of Levy was

3

subsequently recorded as to the Debtors' real properties, and an execution sale was scheduled for November 7, 2007. The execution sale was rescheduled to January 9, 2008.

Meanwhile, in Arizona, the Receiver filed Chapter 11 petitions on behalf of the Debtors on November 30, 2007. The cases are currently pending in this Court, and have been ordered jointly administered. At the request of the Trustee, this Court subsequently converted these cases to Chapter 7. Additionally, on February 19, 2008, the Trustee sold the Harman Property for $195,000. The bankruptcy estate netted the sum of $179,172.35. The sale was free and clear of all liens, with any lien rights, held or asserted by the Defendants, attaching to the net sales proceeds.

On April 4, 2008, the Plaintiff filed this adversary proceeding against the Defendants. The Complaint is based on 11 U.S.C. § 547(b) and seeks the avoidance of any liens, claims, or other interests in the Debtors' real properties (and/or proceeds of sale of the properties) that may be held or asserted by the Defendants. Since the Defendants obtained judgements, and attempted to execute upon said judgments within the preference period, the sole legal issue before the Court is whether the Court should deem the critical date of any transfer, for Section 547 purposes, to be the date that the Defendants first filed their Notices of Lis Pendens. Such a conclusion would provide retroactive effect to the judgments or executions thereon to the date that the Notices were first recorded. However, before the Court may address the substantive issues concerning a preference, it must consider certain choice of law issues.

### III. DISCUSSION

A. <u>OVERVIEW</u>

A motion for summary judgment should be granted if the movant has shown that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056(c). Ruling on a motion for summary judgment necessarily implicates that substantive evidentiary standard of proof which would apply at trial. <u>Anderson v. Liberty</u>

4

Lobby, Inc., 477 U.S. 242, 252 (1986).  A material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party.  Id.  Procedurally, "the proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial."  In re Aquaslide "N' Dive Corp., 85 B.R. 545, 547 (9th Cir. BAP 1987).  Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute."  Frederick S. Wyle P.C. v. Texaco, Inc., 764 F.2d 604, 608 (9th Cir. 1985).  The opponent may not assert the existence of some alleged factual dispute between the parties.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge, and the facts set forth therein must be admissible in evidence.  Aquaslide, at 547.  In addition, summary judgment must be used with care and restraint, Hutchinson v. United States, 677 F.2d 1322, 1325 (9th Cir. 1982), and is reviewed in the light most favorable to the non-moving party.  Hifai v. Shell Oil Co., 704 F.2d 1425, 1428 (9th Cir. 1983).

### B.  CONFLICTS OF LAW ISSUE

As a preliminary matter, the Court must determine the law applicable to the issues before it.  At oral argument the Court alerted the parties to a potential conflicts of law issue.  The Plaintiff and Defendants relied on In re Lane, 980 F.2d 601 (9th Cir. 1992) for their respective positions concerning the circumstances under which a judgment related back to the recordation of a notice of lis pendens.  As the Court pointed out, at oral argument, the Lane decision involved California law, not Arizona or Colorado law.  However, the Court stated, and so advised the parties, that the result would be the same under California or Arizona law.  *See* In re Farnsworth, 384 B.R. 842 (Bankr. D. Ariz. 2008).  Thus, the critical issue was whether Colorado law applied to the controversy between the parties, and if so, whether Colorado law would lead to a different result.  Since none of the parties had considered the issue, the Court requested

5

further briefing on the issue.

The Court must first look to the choice of law rules of the forum state to determine which law to apply. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496, 61 S. Ct. 1020 (1941). In Arizona, courts follow the Restatement (Second) of Conflicts of Law to determine which state's law applies. <u>In re Western United Nurseries, Inc.</u>, 191 B.R. 820 (Bankr. D. Ariz. 1996); <u>Schwartz v. Schwartz</u>, 447 P.2d 254, 257 (Ariz. 1968); <u>Lucero v. Valdez</u>, 180 Ariz. 313, 884 P.2d 199 (App. 1994). According to the Restatement, the objective is to apply the law of the state that has the "most significant relationship" with the parties and the dispute. <u>Patton v. Cox</u>, 276 F.3d 493 (2002).[2] However, a "significant relationship" includes not only the raw number of contacts a state has with a matter, but also the importance and depth of those contacts. <u>Id</u>. at 496.

In this case, the Debtors were Arizona limited liability companies created by Michael Hannan, an Arizona resident. The Defendants are both Colorado residents. The real property at issue is located in Colorado. The Defendants obtained their judgments in Colorado. The ACC initiated administrative proceedings against the Debtors for violation of the securities laws in Arizona. In addition, a Receiver was appointed who filed the Chapter 11 petitions in the District of Arizona.[3]

The Court recognizes Colorado's interest in the disposition of real property located in its state. Generally, a court will apply the law of the situs of the property. However,

---

**2.** The Court also recognizes that some courts have held that in situations where disposition of a federal question requires reference to state law, federal courts are not bound by a forum state's choice of law rules, but are free to apply the law considered relevant to the controversy. <u>In re Crist</u>, 632 F.2d 1226, 1229 (5th Cir. 1980). Moreover, federal choice of law rules dictate that the law of the state with the most significant contacts should apply. <u>In re Cyrus II Partnership</u>, 413 B.R. 609 (Bankr. S.D. Tex. 2008).

**3.** The Receiver separately alleged in this Court that irrespective of the injunction issued concerning the ACC administrative proceedings, the Colorado Court chose to ignore the Arizona proceedings and enter the Defendants' judgments in Colorado. The Receiver believed that he had not been accorded due process in Colorado.

6

in this case, the Court is dealing with Arizona limited liability companies that were subject to the pre-petition regulatory power of the ACC. Thus, the State of Arizona had intervened to ensure that the assets of the Debtors were protected for the benefit of the investors. In light of this heightened interest by the State of Arizona, the pending administrative proceedings initiated by the ACC, the appointment of a Receiver, and the Receiver's filing of the bankruptcy proceedings in this Court, the Court concludes that Arizona has a greater interest, or a more "significant relationship" to the issues presented in this litigation. Therefore, Arizona law will be applied, and Ninth Circuit authority controls. Even if this conclusion is incorrect, the Court has set forth hereinafter the analysis under Colorado and Tenth Circuit law which leads to the same result.

### C. PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)

Under 11 U.S.C. § 547 the bankruptcy trustee may recover certain transfers made by the debtor within 90 days before filing for bankruptcy, if the trustee proves: (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the petition; and (6) one that enables the creditor to receive more than such creditor would receive in a Chapter 7 liquidation of the estate. In re Adbox, Inc., 488 F.3d 836 (9th Cir. 2007); In re Superior Stamp & Coin Co., Inc., 223 F.3d 1004 (9th Cir. 2000).

The Plaintiff asserts that all of the elements of 11 U.S.C. § 547 have been satisfied, and the liens held by the Defendants may be avoided as a matter of law. The Defendants do not concede any liability under the elements of § 547, but argue that the Plaintiff's claim for a preferential transfer must fail because the fifth element in particular is not met under the facts of the case. According to the Defendants, a transfer for Section 547 purposes did not occur "within 90 days of the filing of the petition or within one year of the filing of the petition if the transfer was made to an insider."[4]

---

**4.** The Defendants are not insiders, and neither side has argued as such.

7

The Plaintiff has proven five of the elements of a preference. The transfers of an interest in the Debtors' property are the recordations of the judgments which created the liens on the Debtors' property in Colorado.[5] The concept of a transfer is broadly defined under the Bankruptcy Code. Hence, the acquisition of a lien by a creditor is considered acquiring an interest in a debtor's property.[6] Because the Defendants previously had unsecured claims against the Debtors, the liens were recorded so that the Defendants would directly benefit by changing the nature of their claims from unsecured to secured.[7] When the Defendants filed their complaints in Colorado, they alleged, inter alia, breach of contract, request for money judgment on a promissory note, equitable lien, and unjust enrichment, and sought to recover funds previously loaned or invested with the Debtors. As such, the judgments obtained by the Defendants were on account of antecedent debts owed by the Debtors to the Defendants.[8] The Trustee is entitled to the presumption that the Debtors were insolvent within the 90 days prior to the filing of the petitions, and the Defendants have presented no evidence to the contrary.[9] The Defendants also were attempting to place liens on the Colorado properties so that they could receive a greater distribution on their claims from the Debtors' property.

The record indicates that the amount of general unsecured claims filed in this case

---

**5.** The Court has determined that the law of Arizona applies to the controversy over whether preferences have occurred. However, under either Arizona or Colorado law, the recordation of a judgment creates a lien on real property. *See* Arizona. Rev. Statutes. § 33-961 (West 2009) and Colorado Rev. Statues § 13-52-102 (West 2009) for Arizona and Colorado law, respectively.

**6.** *See* In re Lane, 980 F.2d 601 (9th Cir. 1992).

**7.** *See* In re National Merchandise Co., Inc. 206 B.R. 993 (Bankr.M.D.Fla. 1997) (changing status from unsecured claim to secured status requires Debtor to increase distribution to creditor.); In re Hanson, 282 B.R. 240 (Bankr. D. Colo. 2002) (creditors who do not obtain judgment liens prior to bankruptcy filing have unsecured debt).

**8.** *See* In re Entron Corp., 357 B.R. 47 (Bankr.S.D.N.Y. 2006); In re Dyson, 348 B.R. 314 (Bankr.E.D.Va. 2006).

**9.** 11 U.S.C. §547(f).

8

1 totals $2,151,403.21; secured claims total $418,333.64; priority claims total $325.00, and
2 $126,399.00 were deemed "unclassified." Thus, the aggregate amount of claims in this case
3 totals $2,696,460.85. The Harman property sold for $195,000, with the bankruptcy estate
4 netting the sum of $179,172.35. The two remaining properties, the Crown and Willow
5 properties were valued at $180,000.00 and $40,500.00, respectively in the Debtors' schedules.[10]
6 Therefore, the record reflects insufficient assets to pay all of the creditors of the estates in full.
7 By placing judgment liens on the Colorado properties, the Defendants ensured that they would
8 receive more than the de minimus distribution to unsecured creditors contemplated in these
9 Chapter 7 cases.

10 The final narrow issue before the court is whether the transfers occurred within
11 the 90 days prior to the filing of the bankruptcy petitions of the Debtors. In connection with the
12 McBroom Lawsuit, McBroom recorded a Notice of Lis Pendens on May 9, 2007. In connection
13 with the McBroom & Junghans Lawsuit, the Defendants recorded a Notice of Lis Pendens on
14 June 4, 2007. Thereafter, on September 7, 2007, McBroom recorded a transcript of the judgment
15 obtained in the McBroom Lawsuit, and recorded an amended transcript of judgment on
16 September 17, 2007. On September 4, 2007, McBroom and Junghans recorded transcripts of
17 their separate judgments obtained in the McBroom & Junghans Lawsuit, and each recorded an
18 amended transcript of judgment on September 17, 2007. Given these facts, which filing dates
19 should control for purposes of Section 547? The dates on which the Defendants' recorded their
20 transcripts of the judgments and the amendments thereto, which occurred within the 90-day
21 preference period, or the dates on which the Defendants recorded the Notices of Lis Pendens,
22 which occurred outside the 90-day period?

23 Both parties agree that the decision of In re Lane, 980 F.2d 601, 606 (9th Cir.
24 1992) is dispositive. The Plaintiff argues that the Ninth Circuit, in Lane, held that in regards to
25 litigation related to interests in real property, a judgment rendered upon any claim asserting an

---

**10.** *See* Docket Entry No. 23.

9

interest in the subject real property will relate back to the date of recording of a lis pendens. The critical issue being whether the Colorado Court ever rendered a judgment on an interest in the Debtors' real property. If the Court simply entered a money judgment, the Trustee argues that the judgments do not relate back to the filing of the Notices of Lis Pendens. The Defendants disagree, and argue that in <u>Lane</u>, the Ninth Circuit did not limit its holding to only those situations where a judgment awards the party an interest in real property. Therefore, according to the Defendants, the judgment liens created by the filing of the two judgments are not preferential because the transfers occurred when the Defendants filed their respective Notices of Lis Pendens, prior to the 90-day preference period.

The Plaintiff presents the more cogent argument. In <u>Lane</u>, the plaintiff asserted that the debtor had converted property and diverted proceeds to his personal use and that the proceeds were invested in real property, a portion of which had been conveyed to the debtor's wife. The plaintiff initiated an action against the debtor and other defendants, alleging several claims, including conversion, constructive trust, and fraudulent conveyance. The plaintiff also obtained a preliminary injunction against the debtor's conveying, encumbering, or otherwise disposing of the subject property and then filed a lis pendens. Almost three years later, the plaintiff obtained a judgment. The debtor later filed a voluntary petition under Chapter 11. The plaintiff filed a motion in the bankruptcy court, seeking a determination of its secured status with regards to the debtor's real property. The bankruptcy court found that the abstracts of judgment recorded by the plaintiff related back in time to the filing of the lis pendens, which was outside the preference period.

The Ninth Circuit Bankruptcy Appellate Panel reversed, in <u>Lane,</u> holding that the state court judgment did not affect title or possession of property, and therefore, there could be no relation back in time to the filing of the lis pendens. On appeal, the Ninth Circuit held that under California law, a finding of money damages, incorporated into a judgment, did not support a lis pendens, because the finding did not affect the title or right to possession of property.

10

However, because the state court's decision also included a finding on the fraudulent conveyance claim, which did affect the title or right to possession of property, the filing of a lis pendens was appropriate. Id. at 604.

The Ninth Circuit concluded, in Lane, that the judgment related back to the filing of the lis pendens; thus, the plaintiff did not receive a preference. The Ninth Circuit held that the recording of a valid lis pendens under California law is a transfer within the meaning of Section 547. Thus, when the creditor, after filing the lis pendens, prevailed and obtained a judgment in a fraudulent conveyance action, the transfer related back to the prepetition filing of the lis pendens, and was not avoidable as a preference since the filing of the lis pendens had occurred outside the 90-day preference period.

The Defendants focus their argument on the general holding of Lane that the "filing of a valid lis pendens is a transfer within the meaning of the Bankruptcy Code." Id. at 606. Therefore, according to the Defendants, the Notices of Lis Pendens filed in May and June 2007 were the actual "transfers" for Section 547 purposes, and outside of the 90-day preference period. However, the Defendants disregard the Ninth Circuit's recitation of California law that states a finding of money damages, in and of itself, does not support a lis pendens, because such a finding does not affect the title or right of possession of property. Id. at 604 *citing* Urez Corp. v. Superior Court, 190 App. 3d 1141, 235 Cal. Rptr. 837 (1987). Moreover, "a *judgment affecting possession of property* relates to, and receives its priority from, the date the lis pendens is recorded...."[emphasis added] In re Lane, 980 F.2d 601, 606 (9th Cir. 1992) *citing* Stagen v. Stewart- West Coast Title Co., 149 Cal. App.3d 114, 123, 196 Cal. Rptr. 732 (1983). Accordingly, the linchpin to the Ninth Circuit's holding is that for there to be a valid lis pendens, there must be some claim or action, upon which judgment has been entered, which affects title or possession to the property.

Similar to the lis pendens statute in California, Arizona law states that the filing of a lis pendens is authorized where the actions affects "title to real property." A.R.S. § 12-

11

1191(A) (West 2009). Moreover, actions for money damages do not fall within the meaning of "affecting title to real property" under Arizona law. West Pinal Family Health Center, Inc. McBryde, 162 Ariz. 546, 785 P.2d 66 (App. Div. 2 1989). However, a fraudulent conveyance action is considered to affect title to real property, and the filing of a lis pendens is deemed appropriate. Farris v. Advantage Capital Corp., 217 Ariz. 1, 170 P.3d 250, 253 (2007). The similarities between California and Arizona law are not surprising considering the language in the Arizona lis pendens statute was taken from the California statute. In re Farnsworth, 384 B.R. 842, 848 (Bankr. D. Ariz. 2008). Therefore, under Arizona law, an action that results only in a money judgment will not relate back to the date of recording of a lis pendens in the underlying matter.

Even assuming this Court were bound by Colorado law, the result would be the same. The Arizona lis pendens statute is similar to the Colorado statute, and some courts will even refer to Colorado law when interpreting the Arizona statute. Santa Fe Homeowners' Ass'n v. Bartschi, 219 Ariz. 391, 199 P.3d 646 (Ariz. App. Div. 1 2008). In Colorado, a notice of lis pendens may be filed "in an action wherein relief is claimed affecting the title to real property." Colorado Rev. Statues §38-35-110(1)(West 2009). A simple claim for money damages, by itself, does not affect title and, thus, will not support the filing of a lis pendens. Brossia v. Rick Const., L.T.D. Liability Co., 81 P.3d 1126 (Colo.App. 2003). However, a claim for the imposition of an equitable lien affects title to real property and supports the recording of a lis pendens. Id. When a plaintiff's complaint seeks only money damages and no affirmative relief affecting the title, possession, use or enjoyment of any property, then a trial court can order the release of a lis pendens related to the complaint filed in that court. Central Allied Profit Sharing Trust v. Bailey, 759 P.2d 849 (Colo.App.1988); Peoples Bank & Trust Co. v. Packard, 642 P.2d 57 (Colo.App. 1982). In this case, the Defendants obtained their relief through default judgments, and there is nothing in the record to indicate the Colorado State Court ordered the release of the lis pendens. However, the Court does note that the Colorado State Court only

12

granted judgments upon the breach of contract and unjust enrichment claims, denying judgment on those claims asserting an interest in the real property. Presumably the Receiver could have requested the release of the lis pendens if the Defendants did not take the appropriate action. Instead of pursuing the matter in Colorado, however, the Receiver elected to file the bankruptcy petitions of the Debtors in Arizona.

The decision of United States v. Jarvis, 499 F.3d 1196 (10th Cir. 2007), is also instructive on this issue. In Jarvis, the United States government commenced a criminal forfeiture action against the defendant and filed two notices of lis pendens under New Mexico law on property potentially subject to criminal forfeiture. Like Colorado, California, and Arizona, the New Mexico lis pendens statute provides that a notice of lis pendens may only be recorded in "actions...affecting the title to real estate." Id. at 1203 (quoting New Mexico Statutes Annotated § 38-1-14). The Tenth Circuit reiterated that a lis pendens generally cannot be used as a "substitute for a prejudgment attachment," nor can it be used to create a "constructive trust on property to satisfy a potential judgment." Id. at 1203. The Court held that the filing of the lis pendens was improper because the United States government did not have a ripened interest in the property when the lis pendens was filed.

In this case, one could argue that the Defendants have utilized the lis pendens as such a constructive trust on the property to satisfy the monetary judgment, thus undermining the purpose of the lis pendens, which is to preserve property rights, not to create new or additional rights. Id. at 1203. As a result, if the lis pendens were allowed to be the critical transfers in these cases, the Defendants would be able to receive a greater distribution from the Debtors' estates than they would have received upon the liquidation of the estates had the judgments not been recorded.

Whether considering the law of Colorado or Arizona, this Court concludes that the result is the same. In order for a judgment to relate back to the date of the recording of lis pendens, the judgment must be rendered upon those claims or actions relating to the asserted

13

interest in the property. A judgment for money damages will not relate back.

In this matter, the default judgments were for money damages and, hence, do not relate back to the filing of the Notices of Lis Pendens. The transfers for Section 547 purposes occurred when the transcripts of the judgments, and the amendments thereto, were recorded, which actions took place within the 90-day preference period. The Receiver filed the Chapter 11 petitions for the Debtors on November 30, 2007. The transcripts and related documents concerning the judgments were all recorded within 84 days prior to the filing of the petition. The Trustee has met all of the elements under 11 U.S.C. § 547; hence, the judgments must be avoided as preferences.

## IV. CONCLUSION

The Court concludes that the recordation dates of the judgments, and any amendments thereto, are transfers for Section 547 purposes. The judgments did not relate back to the filing dates of the Notices of Lis Pendens. The Trustee has met all of the elements of 11 U.S.C. § 547. The judgment liens held by the Defendants shall be voided as preferences, and the estate is entitled to the proceeds from the sale of the Debtors' real properties, free and clear of all liens, claims, or interests asserted by Defendants. The Trustee shall lodge an appropriate form of judgment and order in this matter.

DATED this 6th day of January, 2010.

_____

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

14